UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


REBECCA HERNANDEZ,

       Plaintiff,                                     Hon. Ellen S. Carmody

v.

                                                  Case No. 1:14-cv-958

COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.
_____/

## **OPINION**

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act. On December 3, 2014, the parties agreed to proceed in this Court for all further proceedings, including an order of final judgment. (Dkt. #11).

        Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

1

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff was 15 years of age on her alleged disability onset date and 22 years of age as of the date of the ALJ's decision. (Tr. 49, 160). She possesses a General Education Diploma (GED) and has never worked. (Tr. 59). Plaintiff applied for benefits on September 15, 2011, alleging that she had been disabled since September 1, 2004, due to anxiety and bi-polar disorder. (Tr. 160-65, 173). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 82-159). On October 26, 2012, Plaintiff appeared before ALJ Paul Colter with testimony being presented by Plaintiff and a vocational expert. (Tr. 53-73). In a written decision dated January 10, 2013, the ALJ determined that Plaintiff was not disabled. (Tr. 41-49). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 7-11). Plaintiff initiated this pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

**RELEVANT MEDICAL EVIDENCE**

On March 27, 2007, Plaintiff was admitted to the hospital after she began experiencing "increasing depression and suicidal ideations." (Tr. 366). While Plaintiff had previously been prescribed certain medications to treat her depression, she "recently" stopped taking "all medications." (Tr. 349). Following her admission, Plaintiff was given medication immediately after which she began "to stabilize psychologically." (Tr. 345). Plaintiff was discharged from the hospital two days later. (Tr. 345).

Treatment notes dated April 11, 2007, indicate that Plaintiff was suffering from dysthymic disorder and major depression, single episode, moderate. (Tr. 237). Plaintiff's GAF score was rated as 55.[1] (Tr. 237). On May 16, 2011, Plaintiff reported that her medications were "helping a lot." (Tr. 233). Treatment notes dated March 19, 2012, indicate that Plaintiff was suffering from bi-polar disorder. (Tr. 247). Plaintiff's GAF score was rated as 55. (Tr. 247). Treatment notes dated April 20, 2012, through July 25, 2012, indicate that Plaintiff was not taking her medications regularly. (Tr. 243-45).

**ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability.  *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2]  If the Commissioner can make a

---

[1] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV). A GAF score of 55 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

   2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R.

4

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from anxiety and bi-polar disorder, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20

---

404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 43-44). With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work subject to the following limitations: (1) she is limited to simple, repetitive tasks; and (2) she can have only occasional interaction with the public. (Tr. 44).

Because Plaintiff has no past relevant work the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert reported that there existed approximately 36,900 jobs in the state of California[3] and more than 500,000 jobs nationally which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 70-71). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall*

---

[3] Plaintiff lived in California at the time of the administrative hearing through the date of the ALJ's decision. (Tr. 29-30, 33, 38).

*v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006).

      A.      The ALJ Properly Evaluated Plaintiff's Impairments

The ALJ found that Plaintiff suffered from anxiety and bi-polar disorder both of which he characterized as severe impairments. Plaintiff asserts that she is entitled to relief because the ALJ failed to find that she also suffered from severe depressive disorder. At step two of the sequential disability analysis, the ALJ must determine whether the claimant suffers from a severe impairment. The Sixth Circuit has held that where the ALJ finds the presence of a severe impairment at step two and proceeds to continue through the remaining steps of the analysis, the alleged failure to identify as severe some other impairment constitutes harmless error so long as the ALJ considered the entire medical record in rendering his decision. *See Maziarz v. Sec'y of Health and Human Services*, 837 F.2d 240, 244 (6th Cir. 1987); *Kirkland v. Commissioner of Social Security*, 528 Fed. Appx. 425, 427 (6th Cir., May 22, 2013) ("so long as the ALJ considers all the individual's impairments, the failure to find additional severe impairments. . .does not constitute reversible error").

The ALJ stated that he considered "the entire record" in this matter, an assertion supported by his detailed discussion of the meager evidence of record. Moreover, this is not a circumstance in which the ALJ failed to recognize as severe an impairment significantly distinct from the other impairments the ALJ found to be severe. *See, e.g., Mish v. Commissioner of Social Security*, 2011 WL 836750 (W.D. Mich., Mar. 4, 2011). Rather, Plaintiff asserts that she is disabled due to her emotional impairments. The ALJ considered the entire record and concluded that

Plaintiff, in fact, suffers from severe emotional impairments. Finally, there is no evidence that Plaintiff's alleged depressive disorder imposes on her limitations greater than those recognized by the ALJ. Accordingly, this argument is rejected.

      B.      The ALJ Properly Evaluated the Medical Evidence

On September 26, 2011, Dr. Denise Dittemore completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 225-27). Plaintiff's abilities were characterized as "moderate" in three categories, "marked" in nine categories, and "extreme" in three categories. (Tr. 225-27). With respect to the remaining 5 categories, the doctor reported that Plaintiff experienced no limitations. (Tr. 225-27). Plaintiff asserts that she is entitled to relief because the ALJ failed to afford controlling weight to this particular assessment.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at

8

*2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)).  The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence.  *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so.  *Gayheart*, 710 F.3d at 376.  Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."  *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)).  Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment.  *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such.  *Id.* at 376.  In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source,

and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

First, the form that Dr. Dittemore completed does not constitute a "medical opinion" to which deference must be accorded. *See* 20 C.F.R. §§ 404.1527(a)(2); 416.927(a)(2) (a medical opinion is defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions"); *see also*, *Ashley v. Commissioner of Social Security*, 2014 WL 1052357 at *7-8 (W.D. Mich., Mar. 19, 2014) (where "check-box forms" are unaccompanied by explanation, treatment notes, or other evidence, ALJ properly rejected such). Furthermore, as the ALJ concluded, the assessment in question is not supported by the evidence of record. The record simply fails to support the conclusion that Plaintiff is impaired to the extent suggested by Dr. Dittemore. To the contrary, the record supports the conclusion that when Plaintiff takes her prescribed medications she is able to function at a level well beyond that suggested by Dr. Dittemore. Accordingly, this argument is rejected.

C.   Plaintiff does not Suffer from a Listed Impairment

The Listing of Impairments, detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1, identifies various impairments which, if present to the severity detailed therein, result in a finding that the claimant is disabled. Plaintiff asserts that her impairments satisfy the requirements of

section 12.04 of the Listing of Impairments. Section 12.04 of the Listing provides as follows:

> 12.04 Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
>
> A.  Medically documented persistence, either continuous or intermittent, of one of the following:
>
>   1.  Depressive syndrome characterized by at least four of the following:
>
>      a.  Anhedonia or pervasive loss of interest in almost all activities; or
>
>      b.  Appetite disturbance with change in weight; or
>
>      c.  Sleep disturbance; or
>
>      d.  Psychomotor agitation or retardation; or
>
>      e.  Decreased energy; or
>
>      f.  Feelings of guilt or worthlessness; or
>
>      g.  Difficulty concentrating or thinking; or
>
>      h.  Thoughts of suicide; or
>
>      i.  Hallucinations, delusions or paranoid thinking; or
>
>   2.  Manic syndrome characterized by at least three of the following:
>
>      a.  Hyperactivity; or

        b.      Pressure of speech; or

        c.      Flight of ideas; or

        d.      Inflated self-esteem; or

        e.      Decreased need for sleep; or

        f.      Easy distractibility; or

        g.      Involvement in activities that have a high probability of painful consequences which are not recognized; or

        h.      Hallucinations, delusions or paranoid thinking;

Or

    3.    Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

And

B.    Resulting in at least two of the following:

    1.    Marked restriction of activities of daily living; or

    2.    Marked difficulties in maintaining social functioning; or

    3.    Marked difficulties in maintaining concentration, persistence, or pace; or

    4.    Repeated episodes of decompensation, each of extended duration;

>  Or
>
>  C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
>  1. Repeated episodes of decompensation, each of extended duration; or
>
>  2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>
>  3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.04.

The burden rests with Plaintiff to demonstrate that she satisfies the requirements of a listed impairment. *See Kirby v. Comm'r of Soc. Sec.*, 2002 WL 1315617 at *1 (6th Cir., June 14, 2002). There is no support in the record that Plaintiff's impairments satisfy the requirements of this listing. The ALJ evaluated the evidence of record and determined that Plaintiff failed to meet her burden in this regard. This conclusion is supported substantial evidence.

D.     The ALJ Properly Discounted Plaintiff's Subjective Allegations

Plaintiff testified at the administrative hearing that she was unable to work. When asked why she was unable to work, Plaintiff stated:

> Well, because I have bipolar II disorder I feel down a lot of the time. I have a lot of depressive states where I don't feel like doing anything, and I lack the motivation to do those things because I feel down so much. I don't have mania like a regular bipolar I so I don't have those extreme highs. I get hypomania. That's where I feel maybe I'll have a little energy or something, but it's not always energy or positive things. Most of the time it's negative even if I have mania. And, I feel unstable, like, mentally. Like, I might be fine for a while, but then I always switch to something else, like maybe I feel motivated to do something for like, a day, and then the next day I'm like, I don't want to do it. I might go start projects, you know, complete them, things like that, so I find like, I have a hard time seeing myself working like a normal job.

(Tr. 61-62).

Plaintiff also reported that she experiences anxiety when venturing out in public as well as difficulty with concentration and short term memory. (Tr. 62-67). The ALJ found Plaintiff to be less than credible. (Tr. 46). Plaintiff argues that she is entitled to relief because the ALJ improperly rejected her subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed.

14

Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must

stand.  The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded.  *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).  In fact, as the Sixth Circuit recently stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

The ALJ discounted Plaintiff's subjective allegations on the ground that such were contradicted by the evidence of record.  The ALJ specifically noted that Plaintiff responded well when she took her medications as prescribed, but often failed to do so.  As noted above, the evidence simply fails to support Plaintiff's allegations that her impairments are disabling or limit her to the extent alleged.  The ALJ's decision, therefore, to discount Plaintiff's subjective allegations is supported by substantial evidence.

## **CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence.  Accordingly, the Commissioner's decision is **affirmed**.  A judgment consistent with this opinion will enter.


Date:  June 4, 2015                                          /s/ Ellen S. Carmody
                                                                                 ELLEN S. CARMODY
                                                                                 United States Magistrate Judge